UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENE LEONEL G.O.,[1] | No. 2:26-cv-00733-TLN-SCR |
| Petitioner, | A# 254-010-619 |
| v. | **ORDER** |
| WARDEN OF THE CALIFORNIA CITY DETENTION FACILITY, et al., | |
| Respondents. | |

This matter is before the Court on *pro se* Petitioner Rene Leonel G. O.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition"). (ECF No. 1.) Respondents filed an omnibus response and Motion to Dismiss. (ECF No. 6.) For the reasons set forth below, the Motion to Dismiss is DENIED, the Petition is GRANTED, and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

---

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.     FACTUAL AND PROCEDURAL BACKGROUND

This matter arises out of Petitioner's challenge to his civil immigration detention. Petitioner is not a U.S. citizen, but he asserts he has been residing in the United States for approximately eight years.  (ECF No. 1 at 4.)  On November 2, 2018, Petitioner was admitted to the United States on a visitor visa valid through May 2019.  (ECF No. 6-2 at 2.)

Petitioner states he has lived in this country peacefully, complied with all laws, and worked to provide for his family.  (ECF No. 1 at 4.)  Petitioner is working to obtain lawful permanent residency through an application for adjustment of status, which is pending with the government.  (*Id.*; ECF Nos. 6-1, 6-2.)  The government also granted Petitioner authorization for employment.  (ECF No. 6-1 at 2.)

Petitioner has no criminal record.  (ECF Nos. 1 at 4; 6-2 at 2.)  Additionally, there were no removal proceedings pending against Petitioner at the time of his arrest.  (*See* ECF Nos. 1 at 14; 6-5.)

Nevertheless, on January 29, 2026, immigration authorities detained Petitioner.  (ECF No. 1 at 4.)  He asserts he was "subjected to inhuman and degrading treatment" during his arrest, which caused "emotional distress and psychological trauma."  (*Id.*)  Additionally, as a result of Petitioner's detention and inability to work and provide for his family, his family is experiencing significant financial hardship and emotional suffering.  (*Id.* at 5.)

Petitioner has now been detained for approximately three months.  (*Id.*)  In that time, Petitioner has never been provided a bond hearing.  (*Id.* at 7.)  The parties agree that Petitioner is subject to detention under 8 U.S.C. § 1226(a).  (*Id.*; ECF No. 6 at 1.)  Petitioner now challenges the lawfulness of his civil detention without a bond hearing.  (ECF No. 1.)

## II.     STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas

corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### III.    ANALYSIS

Petitioner claims his detention violates the Immigration and Nationality Act ("INA") and the Fifth Amendment Due Process Clause.  (ECF No. 1 at 7–8.)  The parties agree that Petitioner is detained under 8 U.S.C. § 1226(a) and agree that he is entitled to a bond hearing.  (ECF Nos. 1 at 7; 6 at 1, 3.)  However, Respondents contend that Petitioner is required to *request* a hearing and that the Petition should be denied on prudential exhaustion grounds.  (ECF No. 6 at 3–5.)  The Court begins with an analysis of prudential exhaustion and then turns to Petitioner's Fifth Amendment claim.  The Court declines to address Petitioner's statutory claim which seeks duplicative relief.

#### A.    Prudential Exhaustion

Respondents assert that the Petition should be denied because Petitioner has not availed himself of his administrative remedy to request a hearing.  (ECF No. 6 at 1.)  Petitioner states that he is "being held indefinitely *without* any hearing, *any chance to ask* for a bond . . ."  (ECF No. 2 at 1 (emphasis added).)  He further states, "I have been denied the basic right to a bond hearing." *(Id.* at 2.)  Neither party provides any support for their claims.  There is also no evidence in the record that Petitioner was ever notified of his right to request a bond hearing or the method by which he was to make such a request.  Therefore, the Court is unable to determine whether Petitioner has in fact failed to exhaust an available administrative remedy or whether he was obstructed from doing so.  The Court will assume, without finding, that Petitioner did not make such a request and will continue with an analysis of prudential exhaustion.

"Under the exhaustion doctrine, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'"  *S.E.C. v. G. C.*

*George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981) (quoting *Myers v. Bethlehem Shipbuilding Co.*, 303 U.S. 41, 50–51 (1938)). "Exhaustion can be either statutorily or judicially required. If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004). Section 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001) (abrogated on other grounds). However, the Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Id.*

"Courts may require prudential exhaustion if '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'" *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). Nevertheless, "there are a number of exceptions to the general rule requiring exhaustion, covering situations such as where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *S.E.C.*, 637 F.2d at 688 n.4.

Here, considering the *Puga* factors, prudential exhaustion is not required. An administrative record is not necessary to resolve the due process questions presented by Petitioner. Waiver of the prudential exhaustion requirement here will not encourage the deliberate bypass of the administrative scheme in future cases because Respondents have failed to identify the method by which Petitioner was required to have requested a hearing. Further, any risk of deliberate bypass of administrative procedures is reduced by the fact that district courts will only have jurisdiction in the "rare case[s]" where future petitioners allege a "colorable" constitutional or legal challenge to the government's procedures. *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) (*citing Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir.

1991)).  Finally, requiring a bond hearing here would be futile because Respondents have advised this Court that the detention authority for Petitioner has shifted to 8 U.S.C. § 1231 during the pendency of this Petition, thus, the administrative relief once available to Petitioner under 8 U.S.C. § 1226(a) is now foreclosed under agency regulations.  *See El Rescate Legal Servs.*, 959 F.2d at 747 (*citing SAIF Corp./Oregon Ship v. Johnson,* 908 F.2d 1434, 1441 (9th Cir.1990)) ("[W]here the agency's position on the question at issue 'appears already set,' and it is 'very likely' what the result of recourse to administrative remedies would be, such recourse would be futile and is not required."); *see also Mathews v. Eldridge,* 424 U.S. 319 (1976) (finding exhaustion not necessary when it would be "unrealistic" to expect an adjudicating agency to make substantial changes to an administrative regime in light of a single claimant's raising of a constitutional challenge).

Even if exhaustion were required, waiver would be appropriate here to avoid further irreparable harm to Petitioner and further delay in vindicating his constitutional rights.  *See, e.g., Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1253 (W.D. Wash. 2025).  Petitioner and his family have suffered and are suffering irreparable harm as a result of his continued detention, which would unnecessarily continue without waiver of exhaustion.  Accordingly, the Court will not deny Petitioner's request for habeas relief for failure to exhaust administrative remedies.

B.    Fifth Amendment Due Process Violation

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas,* 533 U.S. at 693.  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies,

5

the question remains what process is due.").

### i. Liberty Interest

As for the first step, the Court finds Petitioner has a protectable liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *See Rico-Tapia v. Smith*, No. 25-CV-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025). Liberty interest may be strengthened over time. *See, e.g., Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Petitioner has a clear liberty interest here. He has resided in the United States for eight years and he has built a life here with a family. At the time of Petitioner's arrest, he was pursuing immigration relief and had employment authorization from the government to support his liberty interest. Even if he is removable, or his liberty is revocable, his liberty is still protected by due process. *See Hernandez*, 872 F.3d at 993; *Zadvydas*, 533 U.S. at 693. Indeed, Respondents do not dispute Petitioner's liberty interest. (*See* ECF No. 6.) Thus, Petitioner has a liberty interest protected by due process. The Court next turns to the procedural safeguards that were owed to Petitioner.

### ii. Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him. The eight years that

6

Petitioner spent at liberty underscores the gravity of its loss. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."). Despite his interest in maintaining his liberty, Petitioner has now been detained for over three months without any opportunity to be heard as to the justification of his detention. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any process, either pre- or post-detention. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process. *Zadvydas*, 533 U.S. at 690. Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Here, at the time of his arrest, Petitioner was not subject to a final order of removal. Petitioner contends, since his arrival, he has lived peacefully, complied with all laws, and has no criminal history. He further contends he is not a flight risk because of his strong ties to family and community and his application for immigration relief. Respondents do not dispute Petitioner's claims, nor do they contend that Petitioner is a danger or a flight risk. Without any showing by Respondents of a legitimate interest to detain Petitioner prior to any order of removal, the Court finds there is a serious likelihood Petitioner was erroneously deprived of his liberty interest. Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-

7

TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Notice and custody determination hearings are routine processes for Respondents.[2] Any delay in detention (if justified) for the time to provide notice and a hearing would have been minimal. It would also be less of a fiscal and administrative burden for Respondents to return Petitioner home to await a determination on his immigration proceedings than to continue to detain him. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

Respondents argue that Petitioner did not request a hearing and therefore he is not entitled to relief. However, the fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) (citing *Grannis v. Ordean*, 234 U.S. 385, 394 (1914))). Respondents are in control of Petitioner's custody and it is the government's duty to provide sufficient process when depriving an individual of their liberty.[3] Petitioner has now been detained for three months and he has never been afforded a hearing to determine whether his custody is justified. Thus, the Court finds a clear violation of the Fifth Amendment and Petitioner's procedural due process rights.[4]

**IV.    CONCLUSION**

Petitioner is detained in violation of the Fifth Amendment and he must be released. Accordingly, IT IS HEREBY ORDERED:

1.  Respondents' Motion to Dismiss (ECF No. 6) is DENIED.

---

[2]    Indeed, they are the very processes owed to Petitioner under 8 U.S.C. § 1226(a).

[3]    Additionally, as discussed above, the record is unclear at best as to whether Petitioner did not request a hearing or whether he was obstructed from making such a request.

[4]    The fact that there is now a final order of removal for Petitioner does not alter this Court's finding. (ECF No. 8-1.) Petitioner's constitutional claim does not evaporate with a shifting statutory basis for detention authority. *See Alvarenga Matute v. Wofford*, No. 1:25-CV-01206-KES-SKO, 2025 WL 2996577, at *4 (E.D. Cal. Oct. 24, 2025) (A "change in the applicable statutory authority [for detention] does not render moot petitioner's due process claim"); *Doe v. Becerra*, 697 F. Supp. 3d 937, 943 (N.D. Cal. 2023) ("[J]ust as the "shall" in [§] 1226 gives way to as-applied due process challenges, so too must the 'shall' in [§] 1231(a)." (citing *Demore v. Kim*, 538 U.S. 526 (2003); *Nielsen v. Preap*, 586 U.S. 392 (2019)); *Hernandez Gomez v. Becerra*, No. 23-cv-01330-WHO, 2023 WL 2802230, at *3 (N.D. Cal. Apr. 4, 2023))).

2. The Petititon for Writ of Habeas Corpus (ECF No. 1) is GRANTED.

3. Petitioner's Motion for Temporary Restraining Order (ECF No. 2), Petitioner's Motion for Immediate Release (ECF No. 7), and Respondents' Motion to Dissolve Court's Prohibition on Transfer (ECF No. 8) are denied as MOOT.  The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.

4. Respondents must IMMEDIATELY RELEASE Petitioner Rene Leonel G. O. (A# 254-010-619) from custody under the same conditions he was released prior to his current detention.  Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.  At the time of release, Respondents must return all of Petitioner's documents and possessions.

5. **Respondents must file a notice of compliance with this Order by May 6, 2026.**

6. To avoid further irreparable harm and protect the public interest, Respondents are ENJOINED and RESTRAINED from re-detaining Petitioner absent compliance with constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs his constitutionally protected interest in remaining free from detention. *Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990.  At any such hearing, Petitioner shall be allowed to have counsel present.

7. **The Clerk is directed to serve the California City Detention Center with a copy of this Order.**

8. The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

//

//

9

Date: May 4, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE